STATE OFFICERS AND EMPLOYEES Under the provisions of 74 O.S. 285 [74-285](46) (1978) note, each state teacher is entitled to receive an increase in salary and/or fringe benefits for 1978-79 in the respective statutory amount. The distribution and allocation of such increase may be made directly to each state teacher in the respective statutory amount, may be allocated and distributed to such teachers in such amounts as may be agreed upon pursuant to negotiations as authorized by law or may be allocated pursuant to an agreed upon salary schedule as determined by the school administration and a committee elected by the classroom teachers. Subject to exception for lawful salary deductions, the respective salary increase mandated by law will be an increase over the total of that teacher's salary and fringe benefits in 1978-79. The Attorney General has considered your request for an opinion wherein you ask the following question: "Is a school district required by SB 454 to increase a teacher's salary and/or fringe benefits for 1978-79 by at least $800 over the total of that teacher's salary and fringe benefits in 1977-78 ?" Senate Bill 454, Ch. 294, O.S.L. 1978, is the annual and presently applicable common education appropriation bill. Among other aspects, section 19 of this bill, to be codified as 74 O.S. 285 [74-285](46) (1978) note, provides for mandated teachers' salary increases for fiscal year 1979. This section provides: "Funds allocated in Section 7 of this act for Teachers' Salary Increases for fiscal year 1979 are to provide a salary and/or fringe benefit increase of Eight Hundred Dollars ($800.00) for each state teacher in addition to the regular increment mandated by the state in the Minimum Salary Schedule. Such funds are to be allocated on the basis of Eight Hundred Forty-eight Dollars and forty cents ($848.40) for each state teacher and shall be in addition to other funds allocated to each district. Provided, in those districts which do not pay Federal Insurance Contributions Act (F.I.C.A.) payments, Eight Hundred Dollars ($800.00) shall be allocated for each teacher. Provided, further, if the professional staff and the board of education of a school district are using the negotiation process as set out by Oklahoma law, the distribution of the mandated increase may become a negotiable item. Provided, however, nothing in this act shall prohibit the school administration from working with a committee elected by the classroom teachers for the purpose of determining a salary schedule which meets or exceeds state minimum. It is further provided that the provisions of Enrolled House Bill No. 1170 as enacted by the 2nd Session of the 36th Legislature shall be applicable only in those counties having a population in excess of five hundred thousand (500,000) according to the last Federal Decennial Census." From a review of the, section above quoted, it may be generally stated that this section, in respects relevant to your question, has two basic aspects. The first such aspect is that aspect which mandates the respective increase in teachers' salary and/or fringe benefits. In this connection, this section in essence mandates an increase, in salary and/or fringe benefits, for each state teacher, such increase being in addition to the regular increment mandated by the State in the "Minimum Salary Schedule." The respective increase is $848.40 for each state teacher, except with respect to those districts which do not pay F.I.C.A. payments, in which case the respective increase is $800.00. The second relevant aspect of the above-quoted provision is that aspect pertaining to the actual distribution of the mandated increase. The subject appropriation is basically an appropriation to the State Board of Education which in turn allocates the respective funds to the various local school districts for ultimate distribution to teachers, such distribution being in keeping with the expressed purpose of the subject appropriation. Relative to this ultimate distribution aspect, the section provides for three basic ways through which .such distribution may be accomplished. The first manner of actual distribution contemplated by the act would be, where appropriate, a direct distribution of the total increase by the governing board of education to the teacher, i.e., an across the board increase for all teachers. This manner of distribution would entail a total increase to each teacher in the statutory amount, which increase may be totally dedicated to salary, totally dedicated to increased fringe benefits or apportioned, as the board may determine, between salary and fringe benefits. Under this manner of distribution, each teacher within the district could receive a total increase of $800.00, whether such increase be in salary, in fringe benefits or in an apportioned combination thereof. The second authorized manner of distribution would be a distribution agreed to through the board-teacher negotiation process. As stated in the act: "Provided, further, if the professional staff and the board of education of a school district are using the negotiation process as set out by Oklahoma law, the distribution of the mandated increase may become a negotiable item." The above quoted language is almost identical to the language appearing in Section 16 of House Bill 1001, Extraordinary Session of the Thirty-sixth Legislature (1977), last year's comparable education bill. Under this prior section, the Attorney General has held that the negotiating parties may negotiate and agree to a distribution of the mandated salary increase which may provide for a per teacher allocation other than that provided within the bill under circumstances in which the negotiating parties are negotiating as provided under 70 O.S. 509.1 [70-509.1], et seq. (1971), and where both negotiating parties desire that such allocation be negotiable. Refer, _____ Okl. Op.A.G. _____, issued October 21, 1977 (Opinion No. 77-232). Since the statutory language under consideration in the prior opinion is almost identical to the language above quoted, it would be our conclusion that the ruling of the prior opinion would, in this respect, be applicable to the present legislation. The third authorized manner of distribution would appear to be that manner of distribution impliedly referred to in a latter proviso which states: "Provided, however, nothing in this act shall prohibit the school administration from working with a committee elected by the classroom teachers for the purpose of determining a salary schedule which meets or exceeds state minimum." A plain reading of the above quoted language, as well as a reading consistent with the apparent legislative intent and purpose thereof, will reflect that the subject provision authorizes the school administration to meet and confer with the selected educators committee concerning the establishment of an applicable salary schedule which meets or exceeds the state minimum salary schedule, this authorization being notwithstanding the section's mandated salary increase. Stated otherwise, the above quoted language expressly authorizes the school administration and professional educators to meet and confer for the purpose of establishing (or "determining") a salary schedule consistent with or in excess of the minimum salary schedule prescribed by law. By necessary implication, this would authorize an informal conference procedure through which the administration and the teachers' elected representatives may meet, confer and agree to a salary schedule which complies with (or exceeds) the minimum salary schedule, yet which schedule may not provide for an allocation of the mandated salary increase amount to each teacher. With respect to this conclusion, we note that while the meaning of a statute may not be expanded by construction, that which is implied in a statute is as much a part of it as that which is expressed, and further, that a statutory grant of express power carries with it by necessary implication, every other power necessary and proper to the execution of that power expressly granted. U.S. v. Allen, 179 F. 13, 103 CCA 1 (1910); Missouri, OG Ry Co. v. State, 119 P. 117, 29 Okl. 640 (1911). It could hardly be interpreted that such a salary schedule determination would be contrary to the act in light of the expressed purpose of the subject meeting and conference, i.e., "for the purpose of determining a salary schedule." Based upon a plain reading of the above quoted Section 19, supra, it is apparent that the manner of salary increase allocation, while being in the form of a salary increase, is nevertheless an allocation to "each state teacher." There is no requirement contained within the provisions of Section 19, supra, that the 1978-79 salary, with the mandated increase, be calculated based upon an increase above and beyond the actual 1977-78 salary amount (salary and fringes). Compliance with requirements of Senate Bill 454 may be achieved merely by salary increase allocations in the manner required by statute regardless of 1977-78 salary amounts. Regardless of what the 1977-78 salary amount was, if the mandated increase is allocated to each state teacher, in any one of the three allowable allocation methods, then the act would be complied with and the only additional legal requirement would be that whatever the new salary is, such salary must meet the prescribed minimum salary schedule established by law. Refer, 70 O.S. 18-114 [70-18-114] (1978). While it would appear that in a majority of instances the mandated increase will in fact be a total increase to the prior year's (1977-78) salary, we couch the increase allocation in these terms to allow for those specific instances wherein there may have been a lawful and authorized salary reduction in the prior year's salary. An example of that which is intended by this conclusion may be helpful with regard to the application of this conclusion in light of the question asked. Assume that a teacher, for fiscal year 1977-78 was receiving a sum certain in compensation, such compensation being in the form of direct salary and fringe benefits. Assume further that for purposes of the present 1978-79 fiscal year employment contract, there has occurred a salary (or fringe benefit) reduction which salary reduction would in all other respects be authorized by law. The provisions of Senate Bill 454, as interpreted, would not require that the total 1977-78 compensation be increased by the respective mandated salary increase. Regardless of the lawful amount of the present 1978-79 salary, compliance with the requirements of S.B. 454 would be achieved if each state teacher were allocated the mandated salary increase in accordance with the requirements of Section 19, supra, i.e., allocation of salary increase under one of the three alternative methods of such allocation. It should be noted that this conclusion and interpretation does not encompass nor contemplate the legality of any reduction in salary or fringe benefits from the prior year's contract. If such reduction in salary or fringe benefits is otherwise lawful, i.e., authorized and permitted by statute and contract, then a salary increase allocation to each state teacher in the manner prescribed by law would be in keeping with the requirements of Senate Bill 454 regardless of the actual total 1977-78 salary and fringe benefits. Conversely, if the reduction in salary or fringe benefits were not lawful, then the newly calculated salary and fringe benefits would not be correct, not by virtue of an insufficient increase, but rather by virtue of an unauthorized reduction in salary and/or fringe benefits. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Under the provisions of 74 O.S. 285 [74-285](46) (1978) note, each state teacher is entitled to receive an increase in salary and/or fringe benefits for 1978-79 in the respective statutory amount. The distribution and allocation of such increase may be made directly to each state teacher in the respective statutory amount, may be allocated and distributed to such teachers in such amounts as may be agreed upon pursuant to negotiations as authorized by law or may be allocated pursuant to an agreed upon salary schedule as determined by the school administration and a committee elected by the classroom teachers. Subject to exception for lawful salary deductions, the respective salary increase mandated by law will be an increase over the total of that teacher's salary and fringe benefits in 1978-79. (R. THOMAS LAY) (ksg) ** SEE: OPINION NO. 78-311 (1978) **